UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| FRESH N' PURE DISTRIBUTORS, INC., ) <br> An Illinois Corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FOREMOST FARMS USA, a Wisconsin ) <br> Cooperative Association and DEAN ) <br> FOODS COMPANY, ) <br> ) <br> Defendants. ) <br> ) | Case No. |

## COMPLAINT AT LAW

NOW COMES the Third-Party Plaintiff, **FRESH N' PURE DISTRIBUTORS, INC.**, an Illinois Corporation hereinafter ("**Fresh N' Pure**"), by and through its attorneys, **CARROLL LAW OFFICES, P.C.** and **SAULTER TARVER, LLP**, and for its Complaint against Defendants, **FOREMOST FARMS USA**, a Wisconsin Cooperative Association (hereinafter "**Foremost**") and **DEAN FOODS COMPANY** (hereinafter "**Dean**") for legal and equitable relief, alleges as follows:

### INTRODUCTION

1. This lawsuit seeks to recover damages against Foremost and Dean for breach of contract, for violations of the Clayton Act, 15 U.S.C. § 1 *et seq.*, and for violations of the Illinois Antitrust Act, 740 ILCS 10/1, *et seq.*

### JURSIDICTION AND VENUE

2. This Court has original jurisdiction under the laws of the United States, specifically the Clayton Act of the United States as amended by the Robinson-Patman Act (15

U.S.C. § 1, et seq.), and under 28 U.S.C. § 1331 and 1337. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as Dean is a Delaware corporation, Foremost is a resident of Wisconsin and the Plaintiff is a resident of the State of Illinois, and the amount in controversy exceeds $75,000.00. This Court additionally has jurisdiction over the State counts based upon its pendent jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. 1367.

3. Venue lies in this district pursuant to 15 U.S.C. §15(a) and pursuant to 28 U.S.C. § 1391(b), because both Defendants can be found doing business in this district, and because the parties have consented to venue in this Court pursuant to written agreement.

## THE PARTIES

4. FRESH N' PURE is an Illinois corporation, doing business as a dairy distributor in the State of Illinois, with its principal place of business located at 435 East North Avenue, Streamwood, Illinois.

5. Foremost is a Wisconsin cooperative association operating milk processing plants located in Waukesha and De Pere, Wisconsin, and sometimes doing business as Golden Guernsey Dairy.

6. Dean is a Delaware corporation, with its principal place of business in Dallas, Texas, and upon information and belief, is one of the country's largest processor and distributor of milk and other dairy products. Dean is present in the State of Wisconsin, and transacts substantial business and commerce in the State.

Case 2:11-cv-00470-AEG   Filed 05/17/11   Page 2 of 14   Document 1

## FACTS COMMON TO ALL COUNTS

7. At all times relevant hereto, Plaintiff, Fresh N' Pure, inter alia, operated in the market of the sale of fluid milk to purchasers located in northeastern Illinois.[1]

8. Beginning on or around April 2004, Fresh N' Pure and Foremost executed a written Distribution Agreement, whereby Fresh N' Pure became the exclusive Distributor of Foremost products, including fluid milk under the trade label of Golden Guernsey.

9. *Inter alia*, said Agreement provides:

> 1.1 Appointment. Foremost hereby appoints Distributor as its exclusive distributor of Foremost Products. This appointment is exclusive; except that Foremost reserves the right to maintain its relationship with other distributors with which it deals on the date of this Agreement. Foremost reserves the right to sell Products directly to customers, other than Fresh N' Pure's customers and with Fresh N' Pure's consent.

10. In addition, said Agreement defines Foremost "Products" as "the products manufactured by Foremost that it makes available to its distributors from time to time for delivery or resale."

11. Said Agreement provides for a term of ten years, unless terminated by either party for "cause."

12. Said Agreement further states that "No failure or delay of any party in exercising any right or power given to it under this Agreement shall operate as a waiver thereof. No waiver of any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent, or subsequent breach."

---

[1] "Northeastern Illinois" is defined as the following counties in the State of Illinois: Cook County, DeKalb County, DuPage County, Grundy County, Kane County, Kendall County, Lake County, McHenry County, and Will County.

13. At no time prior to on or about October 22, 2010, was the Agreement terminated by either party.

14. Notwithstanding the appointment of Plaintiff, Fresh N' Pure, as Foremost's exclusive distributor, on or about October, 2008, Foremost began selling its Products to a competing distributor of Plaintiff, Freshline Dairy Distributors, Inc., for sale in the same market as Plaintiff, in violation of the exclusivity provision of the Agreement.

15. On or about April 1, 2009, following the purchase of assets of Foremost by Dean, including the milk processing plants located in Waukesha and De Pere, Wisconsin, FRESH N' PURE became a Distributor for Defendant, Dean, and continued as such until on or about October 22, 2010, continuing under the terms of the Agreement with Foremost.

16. At all times both prior to and subsequent to acquisition of assets of Foremost by Dean, Fresh N' Pure purchased Foremost and Dean Products from the milk processing plant located in Waukesha, Wisconsin.

17. Following acquisition of Foremost by Dean, Plaintiff, Fresh N' Pure, bought Foremost Products from Dean, and in turn, remitted payment for said Products directly to Dean.

18. In addition to the exclusive right to purchase and sell Foremost Products, Plaintiff, Fresh N' Pure was promised by Dean the right to purchase and sell Dean Products to its existing and potential customers, including fluid milk.

19. In reliance upon the promise that Fresh N' Pure would be granted the right to purchase and sell Dean product to its customers and potential customers, Fresh N' Pure would negotiate with potential customers and represent to said customers that it could sell them Dean Products, including fluid milk.

20. Although considered a Dean Distributor, FRESH N' PURE, was denied Dean fluid milk products to sell to its customers and potential customers, the same customers it serviced while an exclusive Distributor for Foremost Farms.

21. On several occasions, after being refused Dean fluid milk Products by Dean, Dean's own long time distributors would then sell Dean fluid milk products to Fresh N' Pure's potential customers with whom Fresh N' Pure had already negotiated a price for the Dean fluid milk products with Dean's full knowledge.

22. Dean fluid milk products continued to be sold and distributed by Dean's own long time distributors, in an attempt to stifle competition between Dean distributors and Foremost distributors, i.e. Fresh N' Pure.

23. At various times both prior to and subsequent to Dean's acquisition of the stock of Foremost, Dean offered rebates and/or intentionally undersold Dean Products, including fluid milk, to certain customers, in an attempt to restrict competition by Foremost and its Distributors for those customers or potential customers.

24. Dean's refusal to allow Fresh N' Pure to sell Dean fluid milk products, discrimination in price and rebates, and underselling to certain of its customers violates Sections 13 and 13a of the Clayton Act because "the effect of such discrimination may be substantially to lessen competition" (15 U.S.C. § 13), or has "the purpose of destroying competition or eliminating a competitor." (15 U.S.C. § 13a).

25. Dean's conduct both prior to and subsequent to its acquisition of the stock of Foremost had the effect of significantly reducing competition with Fresh N' Pure as a competing distributor, and had the intended purpose of eliminating Fresh N' Pure as a competitor altogether.

26. Prior to the acquisition of Foremost assets by Dean's, Foremost, and in turn, Fresh N' Pure, as Foremost's exclusive distributor, had been one of Dean's most aggressive competitors, a competitor that engaged in pricing that Dean considered "dangerous" and "irrational."

27. In recent years, Dean and Foremost have been the first and fourth largest sellers of fluid milk in Wisconsin, the UP, and northeastern Illinois respectively.

### A. THE MILK BUSINESS IN WISCONSIN, THE UP, AND NORTHEASTERN ILLINOIS

28. Dairy processors purchase raw milk from dairy farms and agricultural cooperatives, pasteurize and package the milk, and distribute and sell the processed product. Fluid milk is raw milk that has been processed for human consumption.

29. Dairy processors supply fluid milk directly to retailers, distributors, broad-line food service companies, and institutions such as hospitals and nursing homes. Distributors and food service companies resell the milk that they purchase from processors to, inter alia, retailers, restaurants, and institutions.

30. Milk processors charge different prices to different purchasers for the same product based on a variety of factors, including the number of competitive alternatives available to the purchaser. Large retailers typically request bids from milk processors. Distributors, institutions, and small retailers generally purchase their milk from price lists that dairy processors issue. However, these customers sometimes obtain rebates, discounts, or other forms of price relief, so that two customers covered by the same price list may pay different prices. Bid prices are based on the processor's product, transportation, and service costs, the processor's

capacity utilization, and the number and strength of processors likely to offer competing bids, among other factors.

31. Distance between processors and purchasers is an important consideration in fluid milk pricing because fluid milk has a limited shelf life and is costly to transport. These costs result in most customers purchasing fluid milk from nearby processing plants. For example, more than 90 percent of the milk sold to customers in Wisconsin and the UP traveled less than 150 miles from the plant in which it was processed.

## B. THE COMPETITIVE HARM IN THE FLUID MILK MARKET

### 1. Fluid Milk is a Relevant Product Market

32. Fluid milk is a relevant product market and line of commerce under Section 7 of the Clayton Act. Fluid milk is a product with special nutritional characteristics and has no practical substitutes.

33. Consumer demand for fluid milk is relatively inelastic, i.e., fluid milk consumption does not decrease significantly in response to a price increase. Demand by retailers, distributors, and other purchasers of fluid milk is also inelastic because it is based on consumer demand. As a result, a hypothetical monopolist over fluid milk would profitably impose at least a small but significant and non-transitory price increase (e.g., five percent).

### 2. The Relevant Geographic Market

34. Fluid milk processors are able to charge different prices to buyers in different areas, i.e., they can price discriminate. In the presence of price discrimination, relevant geographic markets may be defined by reference to the location of buyers. In particular, a relevant geographic market for fluid milk refers to a region within which purchasers can be

targeted for a price increase. A portion of the fluid milk supplied to the relevant geographic market comes from plants located outside of Wisconsin, the UP, and northeastern Illinois.

35. Wisconsin, the UP, and northeastern Illinois constitute a relevant geographic market and section of the country under Section 7 of the Clayton Act. As discussed in paragraph 15, most customers purchase fluid milk from suppliers with processing plants located near them because of the costs associated with transportation and shelf life. Prior to the Acquisition, Foremost sold virtually all of its fluid milk to purchasers located in the relevant geographic market. Dean competed to supply fluid milk to purchasers throughout this same area.

### 3. Market Concentration

36. The Acquisition will result in a substantial increase in the concentration of processors that compete to supply fluid milk to purchasers located in the relevant geographic market. Some of these processors are located outside of Wisconsin, the UP, and northeastern Illinois. Prior to the Acquisition, Dean had the largest share of sales to purchasers within the relevant geographic market. Dean accounted for 44.6 percent of fluid milk sales; Foremost accounted for another 12.6 percent. As a result of the Acquisition, Dean now has more than 57 percent of all fluid milk sales in the relevant geographic market. There are only two other competitors with more than five percent of fluid milk sales in the relevant geographic market, Kemps LLC (a subsidiary of Hood LLC) ("Kemps") and Prairie Farms Dairy, Inc., which have 17 and 15 percent, respectively. Moreover, Dean's post-Acquisition shares are even higher in certain areas within the relevant geographic market: over 85 percent in the UP and over 60 percent in Green Bay, Wisconsin, and in northeastern Illinois (including Chicago).

37. As articulated in the Horizontal Merger Guidelines issued by the Department of Justice and the Federal Trade Commission, the Herfindahl-Hirschman Index ("HHI") is a

measure of market concentration.[2] The Acquisition increases the HHI by 1,127 points to 3,830, indicating a substantial increase in concentration. The change in the HHI is even more pronounced in certain areas within the relevant geographic area. For example, in the UP, the HHI increased by 2,814 points to 7,510, and in Green Bay, the HHI increased by 1,728 to 4,777.

### 4. The Anticompetitive Effects from the Loss of Head-to-Head Competition

38. Dean and Foremost often competed head-to-head to win fluid milk contracts because they were the nearest fluid milk processors to many of the purchasers in the relevant geographic market. As discussed in paragraph 31, proximity to the purchaser is an important factor in a processor's competitiveness. Prior to the Acquisition, Foremost competed with Dean throughout the relevant geographic market. The head-to-head competition between Dean and Foremost was most pronounced and pervasive in the UP and northeast and southeast Wisconsin, where the Dean and Foremost plants were the two closest plants to many fluid milk purchasers.

39. Upon information and belief, Foremost had substantial excess capacity, and as a result, was pricing aggressively to secure new business. The elimination of this head-to-head competition likely will produce higher prices and/or reduced services for many purchasers in the relevant geographic market. These effects will vary among purchasers because, as discussed previously, different purchasers have different competitive options. Thus, the prices paid and services received will continue to differ among purchasers after the Acquisition, but for many purchasers the prices they pay and/or the services they receive will be adversely affected by the Acquisition.

## COUNT I
## BREACH OF CONTRACT
### (Foremost and Dean)

1-39. Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1-39 of this Complaint as and for paragraphs 1-39 of this Count I of Plaintiff's Complaint.

40. At the time of Dean's acquisition of the assets of Foremost, the written Distribution Agreement between Foremost and Fresh N' Pure was still in full force and effect.

41. At no time did either Foremost or Dean ever terminate the Agreement with Fresh N' Pure.

42. Sale of Foremost's products and/or Dean's products to any other distributor, constitutes a material breach of the exclusivity provision of the Distribution Agreement.

43. As a result of Foremost and Dean's breach, Fresh N' Pure, lost customers and profits to competitive distributors, including but not limited to Freshline Dairy Distributors, Inc. and J & R Dairy Service, Incorporated, and has been damaged in at least the amount of $100,000.00.

**WHEREFORE**, Plaintiff, **Fresh N' Pure Distributors, Inc.**, an Illinois corporation, prays that this Court enter judgment for money damages in its favor and against Defendants, Foremost and Dean in the amount of at least $100,000.00, plus recovery of the Plaintiffs attorney's fees and costs, and for such other and further relief as this Court may deem just and equitable.

Page **10** of **14**

Case 2:11-cv-00470-AEG   Filed 05/17/11   Page 10 of 14   Document 1

## COUNT II
## VIOLATION OF § 13 OF THE CLAYTON ACT, 15 U.S.C. § 13
(Dean Foods Company)

1-43.   Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1-43 of this Complaint as and for paragraphs 1-43 of this Count II of Plaintiff's Complaint.

44.   15 U.S.C. § 13 prohibits any person and/or company engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

45.   Dean's conduct as discussed herein: 1) denying FRESH N' PURE THE ability to sell its products; 2) selling fluid milk to FRESH N' PURE's customers with knowledge that FRESH N' PURE had already negotiated a price for Dean's fluid milk products;  3) continuing to sell and distribute its products through its long term distributors to FRESH N' PURE's customers in an attempt to unlawfully stifle completion with FRESH N' PURE; 4) offering rebates and/or intentionally underselling Dean products including fluid milk to certain customers

Case 2:11-cv-00470-AEG   Filed 05/17/11   Page 11 of 14   Document 1

in an attempt to unlawfully stifle competition with FRESH N' PURE; constituted unlawful price discrimination which was violative of the Clayton Antitrust Act, 15 U.S.C. § 13.

46. Dean's refusal to allow Fresh N' Pure to sell Dean fluid milk products, discrimination in price and rebates, and underselling to certain of its customers violates Sections 13 and 13a of the Clayton Act because "the effect of such discrimination may be substantially to lessen competition" (15 U.S.C. § 13), or has "the purpose of destroying competition or eliminating a competitor." (15 U.S.C. § 13a).

47. Dean's conduct both prior to and subsequent to its acquisition of the stock of Foremost had the effect of significantly reducing competition with Fresh N' Pure as a competing distributor, and had the intended purpose of eliminating Fresh N' Pure as a competitor altogether.

**WHEREFORE**, Plaintiff, **Fresh N' Pure Distributors, Inc.**, an Illinois corporation, prays that this Court enter judgment for money damages, treble damages, punitive damages in its favor and against Defendants, Foremost and Dean in the amount of at least $100,000.00, plus recovery of the Plaintiffs attorney's fees and costs, and for such other and further relief as this Court may deem just and equitable.

### COUNT III
### VIOLATION OF THE ILLINOIS ANTITRUST ACT, 740 ILCS 10/1 ET SEQ.
### (Dean Foods Company)

1-43. Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1-43 of this Complaint as and for paragraphs 1-43 of this Count III of Plaintiff's Complaint.

44. The Illinois Antitrust Act, 740 ILCS 10/1 *et seq.* makes it illegal for any person and/or company to establish, maintain, use, or attempt to acquire monopoly power over any substantial part of trade or commerce of this State for the purpose of excluding competition or of

controlling, fixing, or maintaining prices in such trade or commerce; or to make a sale or contract for sale of a commodity where the effect of such sale or contract for such sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

45. Dean's conduct as discussed herein: 1) denying FRESH N' PURE THE ability to sell its products; 2) selling fluid milk to FRESH N' PURE's customers with knowledge that FRESH N' PURE had already negotiated a price for Dean's fluid milk products; 3) continuing to sell and distribute its products through its long term distributors to FRESH N' PURE's customers in an attempt to unlawfully stifle completion with FRESH N' PURE; 4) offering rebates and/or intentionally underselling Dean products including fluid milk to certain customers in an attempt to unlawfully stifle competition with FRESH N' PURE; constituted unlawful price discrimination which was violative of The Illinois Antitrust Act, 740 ILCS 10/1 *et seq.*

46. Dean's refusal to allow Fresh N' Pure to sell Dean fluid milk products, discrimination in price and rebates, and underselling to certain of its customers violates the Illinois Antitrust Act because it "substantially lessen competition or tend to create a monopoly in any line of commerce."

47. Dean's conduct both prior to and subsequent to its acquisition of the stock of Foremost had the effect of significantly reducing competition with Fresh N' Pure as a competing distributor, and had the intended purpose of eliminating Fresh N' Pure as a competitor altogether.

**WHEREFORE**, Plaintiff, **Fresh N' Pure Distributors, Inc.**, an Illinois corporation, prays that this Court enter judgment for money damages, treble damages, punitive damages in its favor and against Defendants, Foremost and Dean in the amount of at least $100,000.00, plus

recovery of the Plaintiffs attorney's fees and costs, and for such other and further relief as this Court may deem just and equitable.

                                              Respectfully Submitted,
                                              FRESH N' PURE DISTRIBUTORS, INC.,

                                              s/ Mark J. Carroll
                                              One of Its Attorneys

Mark J. Carroll
IL ARDC No. 6274668
**CARROLL LAW OFFICES, P.C.**
310 South County Farm Road, Suite H
Wheaton, Illinois 60187
(630) 665-9033 Telephone
(630) 690-9652 Facsimile


Keenan J. Saulter
IL ARDC No. 6273377
**SAULTER TARVER LLP**
22 West Washington, Suite 1500
Chicago, Illinois 60602
(312)863-8610 Telephone
(312)577-1710 Facsimile