―――――――――――――――――――――――――――

| | |
|---|---|
| FRESH N' PURE DISTRIBUTORS, INC., ) | |
| An Illinois Corporation, ) | |
| ) | |
|     Plaintiff, ) | Case No. 2:11-CV-00470 |
| ) | |
| v. ) | |
| ) | |
| FOREMOST FARMS USA, a Wisconsin ) | |
| Cooperative Association and DEAN ) | MAGISTRAE JUDGE AARON |
| FOODS COMPANY, DEAN FOODS OF ) | GOODSTEIN |
| WISCONSIN, LLC d/b/a GOLDEN ) | |
| GUERNSEY, DEAN TRANSPORTATION, INC., ) | |
| ) | |
|     Defendants. ) | |

―――――――――――――――――――――――――――)

## FIRST AMENDED COMPLAINT AT LAW

**NOW COMES** the Plaintiff, FRESH N' PURE DISTRIBUTORS, INC., an Illinois

Corporation hereinafter ("Fresh N' Pure"), by and through its attorneys, CARROLL LAW

OFFICES, P.C. and SAULTER TARVER, LLP, and for its First Amended Complaint against

Defendants, FOREMOST FARMS USA, a Wisconsin Cooperative Association (hereinafter

"Foremost"), DEAN FOODS COMPANY (hereinafter "Dean"), DEAN FOODS OF

WISCONSIN, LLC d/b/a GOLDEN GUERNSEY (hereinafter "Dean Wisconsin"), DEAN

TRANSPORTATION, INC. (hereinafter "DTI"), for legal and equitable relief, alleges as

follows:

### INTRODUCTION

1.    This lawsuit seeks to recover damages against Foremost and Dean for breach of

contract, for violations of the Clayton Act, 15 U.S.C. § 1 *et seq.*, and for violations of the Illinois

Antitrust Act, 740 ILCS 10/1, *et seq.*

## JURSIDICTION AND VENUE

2.      This Court has original jurisdiction under the laws of the United States, specifically the Clayton Act of the United States as amended by the Robinson-Patman Act (15 U.S.C. § 1, et seq.), and under 28 U.S.C. § 1331 and 1337.  This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as Dean is a Delaware corporation, Foremost is a resident of Wisconsin and the Plaintiff is a resident of the State of Illinois, and the amount in controversy exceeds $75,000.00.  This Court additionally has jurisdiction over the State counts based upon its pendent jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. 1367.

3.      Venue lies in this district pursuant to 15 U.S.C. §15(a) and pursuant to 28 U.S.C. § 1391(b), because both Defendants can be found doing business in this district, and because the parties have consented to venue in this Court pursuant to written agreement.

## THE PARTIES

4.      FRESH N' PURE is an Illinois corporation, doing business as a dairy distributor in the State of Illinois, with its principal place of business located at 435 East North Avenue, Streamwood, Illinois.

5.      Foremost is a Wisconsin cooperative association operating milk processing plants located in Waukesha and De Pere, Wisconsin, and sometimes doing business as Golden Guernsey Dairy.

6.      Dean is a Delaware corporation, with its principal place of business in Dallas, Texas, and upon information and belief, is one of the country's largest processor and distributor of milk and other dairy products.  Dean is present in the State of Wisconsin, and transacts substantial business and commerce in the State.

7. Upon information and belief, Dean Foods of Wisconsin, LLC dba Golden Guernsey is a Delaware limited liability company that is wholly owned by Suiza Dairy Group, LLC, which in turn, is wholly owned by Dean Foods Company. Golden Guernsey is present in Wisconsin, and transacts substantial business and commerce in the State.

## FACTS COMMON TO ALL COUNTS

8. At all times relevant hereto, Plaintiff, Fresh N' Pure, inter alia, operated in the market of the sale of fluid milk to purchasers located in northeastern Illinois.[1]

9. Beginning on or around April 2004, Fresh N' Pure and Foremost executed a written Distribution Agreement, whereby Fresh N' Pure became the exclusive Distributor of Foremost products, including fluid milk under the trade label of Golden Guernsey. See the Declaration of Joseph E. Purpura, Sr. attached hereto and incorporated by reference as Exhibit "A."

10. On or before April 2, 2004, Foremost drafted and forwarded to Plaintiff said Distribution Agreement for execution and return by Plaintiff.

11. On or about April 2, 2004, Plaintiff, by and through its Vice President, Joseph E. Purpura, Sr., executed said Distribution Agreement and returned it to Foremost, through its agent Bob Walker, Director of Operations.

12. At all times thereafter Plaintiff operated under the terms of said written Distribution Agreement, until its termination.

13. Inter alia, said Agreement provides:

1.1 <u>Appointment</u>. Foremost hereby appoints Distributor as its exclusive distributor of Foremost Products. This appointment is exclusive; except that

---

[1] "Northeastern Illinois" is defined as the following counties in the State of Illinois: Cook County, DeKalb County, DuPage County, Grundy County, Kane County, Kendall County, Lake County, McHenry County, and Will County.

Foremost reserves the right to maintain its relationship with other distributors with which it deals on the date of this Agreement. Foremost reserves the right to sell Products directly to customers, other than Fresh N' Pure's customers and with Fresh N' Pure's consent.

14.    In addition, said Agreement defines Foremost "Products" as "the products manufactured by Foremost that it makes available to its distributors from time to time for delivery or resale."

15.    Said Agreement provides for a term of ten years, unless terminated by either party for "cause."

16.    Said Agreement further states that "No failure or delay of any party in exercising any right or power given to it under this Agreement shall operate as a waiver thereof. No waiver of any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent, or subsequent breach."

17.    At no time prior to on or about October 22, 2010, was the Agreement terminated by either party.

18.    Notwithstanding the appointment of Plaintiff, Fresh N' Pure, as Foremost's exclusive distributor, upon information and belief, on or about October, 2007, Foremost began selling its Products to a competing distributor of Plaintiff, Freshline Dairy Distributors, Inc., for sale in the same market as Plaintiff, in violation of the exclusivity provision of the Agreement.

19.    19.    Notwithstanding the appointment of Plaintiff, Fresh N' Pure, as Foremost's exclusive distributor, upon information and belief, prior to its sale of assets to Dean, Foremost began selling its products to a competing distributor of Plaintiff, C & C Dairy, Inc., for sale in the same market as Plaintiff, in violation of the exclusivity provision of the Agreement.

20.    On or about April 1, 2009, following the purchase of assets of Foremost by Dean, including the milk processing plants located in Waukesha and De Pere, Wisconsin, FRESH N'

PURE became a Distributor for Defendant, Dean, and continued as such until on or about October 22, 2010, continuing under the terms of the Agreement with Foremost. See true and accurate copy of Declaration of David Babin, Jr. authenticating copy of Asset Purchase Agreement by and among GG Acquisition, LLC, Dean Transportation, Inc. and Dean Intellectual Property Services, Inc., as Buyers and Foremost Farms USA, Cooperative, as Seller, attached hereto as Exhibit "B."

21.     *Inter alia*, said Asset Purchase Agreement provides at § 1.1,

"Purchase of Assets.  At the Closing, Seller agrees to sell, transfer, assign and deliver to applicable Buyer the Assets (as defined below), and applicable Buyer agrees to purchase and take the Assets, on the terms and subject to the conditions set forth in this Agreement.  Subject to the provisions of Section 1.2, the "Assets" mean all tangible and intangible assets used in or generated by the Business, . . . specifically including:
. . .(e)  all right, title and interest of Seller under any of the Business Contracts identified in Schedule 1.1(e)(1) (excluding any agreements that Schedule 2.14(b) indicates will be retained by Seller following the Closing or terminated at or prior to the Closing), including unfulfilled orders from the Business's customers as of the Closing Date (collectively, the "Assumed Contracts"); . . .

22.     *Inter alia*, said Asset Purchase Agreement provides at Schedule 1.1(e)(1), Business Contracts Assumed by Buyer at no. 115 that Dean assumes the "Oral Contract with Fresh 'N Pure Distribution of Streamwood, Illinois."

23.     At all times prior to acquisition of assets of Foremost by Dean, Fresh N' Pure purchased Foremost Products from the milk processing plant located in Waukesha, Wisconsin.

24.     Following the acquisition of assets of Foremost by Dean, representatives of Dean, Pat Grassinger, and Foremost, Brad Parks, met with agents of Fresh N' Pure, Fred Purpura and Joseph Purpura, at Fresh N' Pure's facility in Streamwood, Illinois, to assure the Plaintiff that despite of the acquisition of assets, Fresh N' Pure's relationship as a distributor of Foremost products would not change.  In addition, Plaintiff was orally promised the right to distribute

Dean label products, including gallon and half gallon size fluid milk. At no time was Fresh N' Pure ever notified that the written Distribution Agreement was being terminated.

25. At all times following the acquisition of assets of Foremost by Dean, Fresh N' Pure purchased Foremost Products, as well as limited Dean label products, from the milk processing plant located in Waukesha, Wisconsin.

26. Following acquisition of Foremost by Dean, Plaintiff, Fresh N' Pure, bought Foremost Products, as well as limited Dean label products, from Dean, and in turn, remitted payment for said Products directly to Dean.

27. In addition to the exclusive right to purchase and sell Foremost Products pursuant to the written Distribution Agreement, Plaintiff, Fresh N' Pure was repeatedly promised by Dean the right to purchase and sell Dean Products to its existing and potential customers, including the right to sell gallon and half gallon size fluid milk.

28. Until on or about October 22, 2010, Plaintiff had fully performed all that was required of it under the terms of the written Distribution Agreement.

29. In reliance upon the promise that Fresh N' Pure would be granted the right to purchase and sell Dean product to its customers and potential customers, Fresh N' Pure would negotiate with potential customers and represent to said customers that it could sell them Dean Products, including fluid milk.

30. Despite repeated promises to do so and although considered a Dean Distributor, FRESH N' PURE, was denied Dean fluid milk products to sell to its customers and potential customers, the same customers it serviced while an exclusive Distributor for Foremost Farms.

31. On several occasions, after being refused Dean fluid milk Products by Dean, Dean's own long time distributors would then sell Dean fluid milk products to Fresh N' Pure's

customers and potential customers with whom Fresh N' Pure had already negotiated a price for the Dean fluid milk products with Dean's full knowledge.

32.     Specifically, on or about January, February, and March, 2010, Plaintiff had negotiated for the sale of Dean label products, including gallon and half gallon size fluid milk, to Michael's Fresh Market for sale in all nine of its Chicagoland grocery stores.  However, Dean refused to allow Plaintiff to sell the gallon size and half gallon size Dean label fluid milk.  In an attempt, to service its customer, Plaintiff bought Dean fluid milk from its competitor, Cloverleaf Farms Distributors, Inc., until again, upon information and belief, Dean threatened Cloverleaf to stop selling to Fresh N' Pure or risk losing its right to sell Dean fluid milk.

33.     As a result of Dean's interference and anticompetitive behavior, Fresh N' Pure lost Michael's Fresh Market, all 9 stores, as a customer to Dean's distributor, J & R Dairy Service, Incorporated.

34.     In similar fashion, Plaintiff lost Tischler's  Finer Foods, Inc. as a customer as a result of Dean's interference and anticompetitive behavior, to DTI, who incidentally was one of the Buyers of Foremost's Assets under the Asset Purchase Agreement.

35.     DTI specifically assumed the Distribution Agreement between Foremost and Fresh N' Pure, and then offered coupons and promotions to Tischler, Fresh N' Pure's customer, for sale in Tischler's Grocery stores at a price less than Fresh N' Pure could purchase from Dean.

36.     Similarly, Plaintiff lost Moo & Oink, Inc. as a customer, a total of 6 stores, on or around March 2010, as a result of Dean's interference and anticompetitive  behavior, specifically as a result of Dean's refusal to allow Fresh N' Pure to sell and/or distribute Dean label fluid milk to its customers and/or to purchase Dean label fluid milk from Cloverleaf Farms.

37.     Dean fluid milk products continued to be sold and distributed by Dean's own long time distributors, in an attempt to stifle competition with Foremost distributors, i.e. Fresh N' Pure.

38.     At various times both prior to and subsequent to Dean's acquisition of the assets of Foremost, Dean offered rebates and/or intentionally undersold Dean Products, including fluid milk, to certain of Fresh N' Pure's customers, in an attempt to restrict competition by Foremost and its Distributors for those customers or potential customers.

39.     Dean's refusal to allow Fresh N' Pure to sell Dean fluid milk products, discrimination in price and rebates, and underselling to certain of its customers violates Sections 13 and 13a of the Clayton Act because "the effect of such discrimination may be substantially to lessen competition" (15 U.S.C. § 13), or has "the purpose of destroying competition or eliminating a competitor." (15 U.S.C. § 13a).

40.     Dean's conduct both prior to and subsequent to its acquisition of the stock of Foremost had the effect of significantly reducing competition with Fresh N' Pure as a competing distributor, and had the intended purpose of eliminating Fresh N' Pure as a competitor altogether.

41.     Prior to the acquisition of Foremost assets by Dean's, Foremost, and in turn, Fresh N' Pure, as Foremost's exclusive distributor, had been one of Dean's most aggressive competitors, a competitor that engaged in pricing that Dean considered "dangerous" and "irrational."

42.     In recent years, Dean and Foremost have been the first and fourth largest sellers of fluid milk in Wisconsin, the UP, and northeastern Illinois respectively.

### A. THE MILK BUSINESS IN WISCONSIN, THE UP, AND NORTHEASTERN ILLINOIS

43.     Dairy processors purchase raw milk from dairy farms and agricultural cooperatives, pasteurize and package the milk, and distribute and sell the processed product. Fluid milk is raw milk that has been processed for human consumption.

44.     Dairy processors supply fluid milk directly to retailers, distributors, broad-line food service companies, and institutions such as hospitals and nursing homes. Distributors and food service companies resell the milk that they purchase from processors to, inter alia, retailers, restaurants, and institutions.

45.     Milk processors charge different prices to different purchasers for the same product based on a variety of factors, including the number of competitive alternatives available to the purchaser.  Large retailers typically request bids from milk processors. Distributors, institutions, and small retailers generally purchase their milk from price lists that dairy processors issue. However, these customers sometimes obtain rebates, discounts, or other forms of price relief, so that two customers covered by the same price list may pay different prices. Bid prices are based on the processor's product, transportation, and service costs, the processor's capacity utilization, and the number and strength of processors likely to offer competing bids, among other factors.

46.     Distance between processors and purchasers is an important consideration in fluid milk pricing because fluid milk has a limited shelf life and is costly to transport. These costs result in most customers purchasing fluid milk from nearby processing plants. For example, more than 90 percent of the milk sold to customers in Wisconsin and the UP traveled less than 150 miles from the plant in which it was processed.

## B. THE COMPETITIVE HARM IN THE FLUID MILK MARKET

### 1. Fluid Milk is a Relevant Product Market

47.     Fluid milk is a relevant product market and line of commerce under Section 7 of the Clayton Act. Fluid milk is a product with special nutritional characteristics and has no practical substitutes.

48.     Consumer demand for fluid milk is relatively inelastic, i.e., fluid milk consumption does not decrease significantly in response to a price increase. Demand by retailers, distributors, and other purchasers of fluid milk is also inelastic because it is based on consumer demand. As a result, a hypothetical monopolist over fluid milk would profitably impose at least a small but significant and non-transitory price increase (e.g., five percent).

## 2. The Relevant Geographic Market

49.     Fluid milk processors are able to charge different prices to buyers in different areas, i.e., they can price discriminate. In the presence of price discrimination, relevant geographic markets may be defined by reference to the location of buyers. In particular, a relevant geographic market for fluid milk refers to a region within which purchasers can be targeted for a price increase. A portion of the fluid milk supplied to the relevant geographic market comes from plants located outside of Wisconsin, the UP, and northeastern Illinois.

50.     Wisconsin, the UP, and northeastern Illinois constitute a relevant geographic market and section of the country under Section 7 of the Clayton Act. As discussed in paragraph 15, most customers purchase fluid milk from suppliers with processing plants located near them because of the costs associated with transportation and shelf life. Prior to the Acquisition, Foremost sold virtually all of its fluid milk to purchasers located in the relevant geographic market. Dean competed to supply fluid milk to purchasers throughout this same area.

## 3. Market Concentration

51.     The Acquisition will result in a substantial increase in the concentration of processors that compete to supply fluid milk to purchasers located in the relevant geographic market. Some of these processors are located outside of Wisconsin, the UP, and northeastern Illinois. Prior to the Acquisition, Dean had the largest share of sales to purchasers within the relevant geographic market. Dean accounted for 44.6 percent of fluid milk sales; Foremost accounted for another 12.6 percent. As a result of the Acquisition, Dean now has more than 57 percent of all fluid milk sales in the relevant geographic market. There are only two other competitors with more than five percent of fluid milk sales in the relevant geographic market, Kemps LLC (a subsidiary of Hood LLC) ("Kemps") and Prairie Farms Dairy, Inc., which have 17 and 15 percent, respectively. Moreover, Dean's post-Acquisition shares are even higher in certain areas within the relevant geographic market: over 85 percent in the UP and over 60 percent in Green Bay, Wisconsin, and in northeastern Illinois (including Chicago).

52.     As articulated in the Horizontal Merger Guidelines issued by the Department of Justice and the Federal Trade Commission, the Herfindahl-Hirschman Index ("HHI") is a measure of market concentration.2 The Acquisition increases the HHI by 1,127 points to 3,830, indicating a substantial increase in concentration. The change in the HHI is even more pronounced in certain areas within the relevant geographic area. For example, in the UP, the HHI increased by 2,814 points to 7,510, and in Green Bay, the HHI increased by 1,728 to 4,777.

### 4. The Anticompetitive Effects from the Loss of Head-to-Head Competition

53.     Dean and Foremost often competed head-to-head to win fluid milk contracts because they were the nearest fluid milk processors to many of the purchasers in the relevant geographic market. As discussed in paragraph 31, proximity to the purchaser is an important factor in a processor's competitiveness. Prior to the Acquisition, Foremost competed with Dean

throughout the relevant geographic market. The head-to-head competition between Dean and Foremost was most pronounced and pervasive in the UP and northeast and southeast Wisconsin, where the Dean and Foremost plants were the two closest plants to many fluid milk purchasers.

54.     Upon information and belief, Foremost had substantial excess capacity, and as a result, was pricing aggressively to secure new business. The elimination of this head-to-head competition likely will produce higher prices and/or reduced services for many purchasers in the relevant geographic market. These effects will vary among purchasers because, as discussed previously, different purchasers have different competitive options. Thus, the prices paid and services received will continue to differ among purchasers after the Acquisition, but for many purchasers the prices they pay and/or the services they receive will be adversely affected by the Acquisition.

**COUNT I**
**BREACH OF CONTRACT**
**(Foremost)**

55.     Plaintiff repeats and re-alleges and incorporates by reference the allegations contained in Paragraphs 1-54 above with the same force and effect as if herein set forth.

56.     At the time of Dean's acquisition of the assets of Foremost, the written Distribution Agreement between Foremost and Fresh N' Pure was still in full force and effect.

57.     At no time did Foremost ever terminate the Agreement with Fresh N' Pure.

58.     Sale of Foremost products to any other distributor, constitutes a material breach of the exclusivity provision of the Distribution Agreement.

59.     As a result of Foremost's breach, Fresh N' Pure, lost customers and profits to competitive distributors since at least October, 2007, including but not limited to Freshline Dairy Distributors, Inc. and upon information and belief, C & C Dairy, Inc. and Lockwood Dairy

Company, and has been damaged in at least the amount of $100,000.00 up to and including the date of acquisition of Foremost's assets by Dean.

60.     In the alternative to the allegation contained in paragraph no. 59, Upon information and belief, the written Distribution Agreement between Plaintiff and Foremost, was not assumed by Dean as part of its acquisition of Foremost's Assets, and accordingly, Foremost continues to be liable for the continued sale of Foremost products to competitors of Fresh N' Pure.

**WHEREFORE**, Plaintiff, **Fresh N' Pure Distributors, Inc.**, an Illinois corporation, prays that this Court enter judgment for money damages in its favor and against Defendant, Foremost in the amount of at least $100,000.00, plus recovery of the Plaintiffs attorney's fees and costs, and for such other and further relief as this Court may deem just and equitable.

<u>**COUNT II**</u>
<u>**BREACH OF CONTRACT**</u>
**(Dean Foods Company)**

61.     Plaintiff repeats and re-alleges and incorporates by reference the allegations contained in Paragraphs 1-60 above with the same force and effect as if herein set forth.

62.     At the time of Dean's acquisition of the assets of Foremost, the written Distribution Agreement between Foremost and Fresh N' Pure was still in full force and effect.

63.     At no time did either Foremost or Dean ever terminate the Agreement with Fresh N' Pure.

64.     Sale of Foremost products to any other distributor, constitutes a material breach of the exclusivity provision of the Distribution Agreement.

65.     Following Dean's acquisition of the assets of Foremost and assumption of the existing Distribution Agreement between Foremost and Fresh N' Pure, Dean sold Foremost

products to Plaintiff's competitive distributors, including but not limited to Freshline Dairy Distributors, Inc. and upon information and belief, C & C Dairy, Inc. and Lockwood Dairy Company.

66.     As a result of Dean's breach, Fresh N' Pure, lost customers and profits to competitive distributors since the date of acquisition of Foremost's assets by Dean, and has been damaged in at least the amount of $100,000.00.

**WHEREFORE**, Plaintiff, **Fresh N' Pure Distributors, Inc.**, an Illinois corporation, prays that this Court enter judgment for money damages in its favor and against Defendant, Dean Foods Company in the amount of at least $100,000.00, plus recovery of the Plaintiffs attorney's fees and costs, and for such other and further relief as this Court may deem just and equitable.

## COUNT III
## VIOLATION OF § 13 OF THE CLAYTON ACT, 15 U.S.C. § 13
### (Dean Foods Company)

67.     Plaintiff repeats and re-alleges and incorporates by reference the allegations contained in Paragraphs 1-66 above with the same force and effect as if herein set forth.

68.     15 U.S.C. § 13 prohibits any person and/or company engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with

any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

69.     Dean's conduct as discussed herein: 1) denying FRESH N' PURE THE ability to sell its products; 2) selling fluid milk to FRESH N' PURE's customers with knowledge that FRESH N' PURE had already negotiated a price for Dean's fluid milk products; 3) continuing to sell and distribute its products through its long term distributors to FRESH N' PURE's customers in an attempt to unlawfully stifle completion with FRESH N' PURE; 4) offering rebates and/or intentionally underselling Dean products including fluid milk to certain customers in an attempt to unlawfully stifle competition with FRESH N' PURE; constituted unlawful price discrimination which was violative of the Clayton Antitrust Act, 15 U.S.C. § 13.

70.     Dean's refusal to allow Fresh N' Pure to sell Dean fluid milk products, discrimination in price and rebates, and underselling to certain of its customers violates Sections 13 and 13a of the Clayton Act because "the effect of such discrimination may be substantially to lessen competition" (15 U.S.C. § 13), or has "the purpose of destroying competition or eliminating a competitor." (15 U.S.C. § 13a).

71.     Dean's conduct both prior to and subsequent to its acquisition of the stock of Foremost had the effect of significantly reducing competition with Fresh N' Pure as a competing distributor, and had the intended purpose of eliminating Fresh N' Pure as a competitor altogether.

**WHEREFORE**, Plaintiff, **Fresh N' Pure Distributors, Inc.**, an Illinois corporation, prays that this Court enter judgment for money damages, treble damages, punitive damages  in its favor and against Defendants, Foremost and Dean in the amount of at least $100,000.00, plus recovery of the Plaintiffs attorney's fees and costs, and for such other and further relief as this Court may deem just and equitable.

**COUNT IV**
**VIOLATION OF THE ILLINOIS ANTITRUST ACT, 740 ILCS 10/1 ET SEQ.**
**(Dean Foods Company)**

72.　　Plaintiff repeats and re-alleges and incorporates by reference the allegations contained in Paragraphs 1-71 above with the same force and effect as if herein set forth.

73.　　The Illinois Antitrust Act, 740 ILCS 10/1 et seq. makes it illegal for any person and/or company to establish, maintain, use, or attempt to acquire monopoly power over any substantial part of trade or commerce of this State for the purpose of excluding competition or of controlling, fixing, or maintaining prices in such trade or commerce; or to make a sale or contract for sale of a commodity where the effect of such sale or contract for such sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

74.　　Dean's conduct as discussed herein: 1) denying FRESH N' PURE THE ability to sell its products; 2) selling fluid milk to FRESH N' PURE's customers with knowledge that FRESH N' PURE had already negotiated a price for Dean's fluid milk products;  3) continuing to sell and distribute its products through its long term distributors to FRESH N' PURE's customers in an attempt to unlawfully stifle completion with FRESH N' PURE; 4) offering rebates and/or intentionally underselling Dean products including fluid milk to certain customers in an attempt to unlawfully stifle competition with FRESH N' PURE; constituted unlawful price discrimination which was violative of The Illinois Antitrust Act, 740 ILCS 10/1 et seq.

Dean's refusal to allow Fresh N' Pure to sell Dean fluid milk products, discrimination in price and rebates, and underselling to certain of its customers violates the Illinois Antitrust Act because it "substantially lessen competition or tend to create a monopoly in any line of commerce."

75.     Dean's conduct both prior to and subsequent to its acquisition of the stock of Foremost had the effect of significantly reducing competition with Fresh N' Pure as a competing distributor, and had the intended purpose of eliminating Fresh N' Pure as a competitor altogether.

**WHEREFORE**, Plaintiff, **Fresh N' Pure Distributors, Inc.**, an Illinois corporation, prays that this Court enter judgment for money damages, treble damages, punitive damages in its favor and against Defendants, Foremost and Dean in the amount of at least $100,000.00, plus recovery of the Plaintiffs attorney's fees and costs, and for such other and further relief as this Court may deem just and equitable.

<u>**COUNT V**</u>
<u>**TORTIOUS INTERFERENCE WITH CONTRACT**</u>
**(Dean Foods Company)**

76.     Plaintiff repeats and re-alleges and incorporates by reference the allegations contained in Paragraphs 1-75 above with the same force and effect as if herein set forth.

77.     On or about January, February, and March, 2010, Plaintiff had negotiated for the sale of Dean label products, including gallon and half gallon size fluid milk, to Michael's Fresh Market for sale in all nine of its Chicagoland grocery stores.  However, Dean refused to allow Plaintiff to sell the gallon size and half gallon size Dean label fluid milk.  In an attempt, to service its customer, Plaintiff bought Dean fluid milk from its competitor, Cloverleaf Farms Distributors, Inc., until again, upon information and belief, Dean threatened Cloverleaf to stop selling to Fresh N' Pure or risk losing its right to sell Dean fluid milk.

78.     As a result of Dean's contractual interference, Fresh N' Pure lost Michael's Fresh Market, all 9 stores, as a customer to Dean's distributor, J & R Dairy Service, Incorporated.

79.     In similar fashion, Plaintiff lost Tischler's Finer Foods, Inc. as a customer as a result of Dean's contractual interference and anticompetitive behavior, to DTI, who incidentally was one of the Buyers of Foremost's Assets under the Asset Purchase Agreement.

80.     DTI specifically assumed the Distribution Agreement between Foremost and Fresh N' Pure, and then offered coupons and promotions to Tischler, Fresh N' Pure's customer, for sale in Tischler's Grocery stores at a price less than Fresh N' Pure could purchase from Dean.

81.     Similarly, Plaintiff lost Moo & Oink, Inc. as a customer, a total of 6 stores, on or around March 2010, as a result of Dean's contractual interference and anticompetitive behavior, specifically as a result of Dean's refusal to allow Fresh N' Pure to sell and/or distribute Dean label fluid milk to its customers and/or to purchase Dean label fluid milk from Cloverleaf Farms.

82.     Dean fluid milk products continued to be sold and distributed by Dean's own long time distributors, in an attempt to stifle competition with Foremost distributors, i.e. Fresh N' Pure.

83.     At various times both prior to and subsequent to Dean's acquisition of the assets of Foremost, Dean offered rebates and/or intentionally undersold Dean Products, including fluid milk, to certain of Fresh N' Pure's customers, in an attempt to restrict competition by Foremost and its Distributors for those customers or potential customers.

84.     Each of the contracts referenced herein (that Dean interfered with) were valid and enforceable between Plaintiff and various third parties as referenced herein.

85.     Dean was aware of these contracts with these various third parties (this is evidenced by Dean's promises to Plaintiff that it would allow Plaintiff to sell Dean fluid milk products to its customers and Dean's subsequent sales to those same customers).

86.     Dean's conduct constituted an intentional and unjustified inducement of Plaintiff's breach of its contracts with these third parties.

87.     Dean's wrongful contractual interference and anticompetitive behavior caused a subsequent breach of the contracts by the various third parties.

**WHEREFORE**, Plaintiff, **Fresh N' Pure Distributors, Inc.**, an Illinois corporation, prays that this Court enter judgment for money damages, treble damages, punitive damages in its favor and against Defendants Dean in the amount of at least $100,000.00, plus recovery of the Plaintiffs attorney's fees and costs, and for such other and further relief as this Court may deem just and equitable.

Respectfully Submitted,
FRESH N' PURE DISTRIBUTORS, INC.,

s/ Mark J. Carroll
One of Its Attorneys

Mark J. Carroll
IL ARDC No. 6274668
**CARROLL LAW OFFICES, P.C.**
310 South County Farm Road, Suite H
Wheaton, Illinois  60187
(630) 665-9033 Telephone
(630) 690-9652 Facsimile

Keenan J. Saulter
IL ARDC No. 6273377
**SAULTER TARVER LLP**
22 West Washington, Suite 1500
Chicago, Illinois  60602
(312)899-6519 Telephone
(312)577-1710 Facsimile